Peter K. Strojnik, State Bar No. 026082
pstrojnik@strojniklaw.com
**THE STROJNIK FIRM L.L.C.**
**A LIMITED LIABILITY COMPANY**
Esplanade Center III, Suite 700
2415 East Camelback Road
Phoenix, Arizona 85016
Telephone: (602) 510-9409
Facsimile: (602) 773-0370

Attorneys for Plaintiff THERESA BROOKE

# UNITED STATES DISTRICT COURT

## DISTRICT OF ARIZONA

| | |
|---|---|
| THERESA BROOKE, a married woman dealing with her sole and separate claim, <br><br> Plaintiff, <br><br> vs. <br><br> WARWICK DENVER CORP., a Delaware corporation dba Warwick Denver, <br><br> Defendants. | Case No: 2:17-cv-02114-HRH <br><br> **MOTION FOR DEFAULT JUDGMENT** |

### MOTION

Plaintiff Theresa Brooke respectfully moves this Court for an Order entering default judgment against Defendant Warkwick Denver Corp., pursuant to Rule 55, Federal Rules of Civil Procedure. The grounds for this Motion are that Defendants have failed to appear within the time proscribed by Rule 12 and the Clerk of the Court has entered default against Defendants. The legal grounds for this Motion are a violation of Title III of the ADA and a violation of 28 C.F.R. § 36.302(e)(1).

With this Motion, Plaintiff respectfully prays for the entry of judgment against Defendants in the following particulars:

- ❖ Declaratory relief that Defendant violated Title III of the Americans with Disabilities Act by its violation of 28 C.F.R. §36.302(e)(1) – the

failure to allow for the reservation of ADA-accessible lodging rooms at its hotel facility in the "same manner" as one can reserve non-accessible lodging rooms;

- ❖ Injunctive relief ordering Defendant to alter its hotel website to allow for the reservation of ADA-accessible rooms not later than thirty (30) days following entry of judgment;

- ❖ *Nominal* damages pursuant to *Bayer v. Neiman Marcus Grp.*, Ninth Circuit case no. 15-15287 (June 26, 2017) (for publication);

- ❖ Attorneys fees in the amount of $3,965.00; and,

- ❖ Costs in the amount of $400.00.

This Motion is based upon the below Memorandum of Points and Authorities, Declaration of Peter Strojnik, exhibits filed herewith, any reply brief, the Doc. 1 Complaint, and any arguments presented to the Court at the hearing on this Motion. For the Court's convenience, a proposed form of Order and Judgment is attached hereto.

## MEMORANDUM OF POINTS AND AUTHORITIES

I.     FACTS ALLEGED IN THE COMPLAINT

Plaintiff Theresa Brooke is a disabled woman who relies on a wheelchair for locomotion because she has only one leg. Doc. 1. Defendant Warwick Denver Corp. is the owner and operator of the hotel Warwick Denver. *Id*. Defendant also operates the website www.warwickhoterls.com/denver (the "hotel website"). *Id*.

Plaintiff is an avid traveler; due to her many special needs, she requires the use of lodging rooms that are accessible to her and have standard accessibility features such as roll-in showers, adequate spacing around the furniture in the lodging room, grab bars surrounding the toilet, and other commonly-accepted accessibility features. *Id*. Plaintiff went to the hotel website to book a room at Defendant's hotel. *Id*. Since Plaintiff requires the use of ADA-accessible features, she attempted to book an ADA-accessible room on the hotel website. *Id*. However, Plaintiff was not able to reserve an ADA-accessible room because the hotel website only allows for the reservation of *non*-accessible rooms. *Id*. Plaintiff attempted to reserve a room farther out – two and four months out – and still could not locate an accessible room to rent. *Id*. Defendant does

2

not allow for the reservation of ADA-accessible rooms on its hotel website. *Id*. at ¶15. Stated another way, one cannot reserve ADA rooms in the "same manner" as one can reserve *non*-accessible rooms on Defendant's website.

Plaintiff prefers booking rooms online versus in person or via telephone, as the former generally offers discounted rates. *Id*. Because Defendant does not allow for the reservation of ADA-accessible rooms on its hotel website, Plaintiff was deterred and did not book a room. *Id*.

## II. ARGUMENT AND SUPPORTING LAW

### A. Standard Governing Motions for Entry of Default Judgment

A district court may enter default judgment against a party whose default has been entered under Rule 55(b) of the Federal Rules of Civil Procedure. *PepsiCo, Inc. v. California Security Cans*, 238 F.Supp.2d 1172, 1174 (C.D. Cal. 2002); *Kloepping v. Firemen's Fund*, 1996 WL 75314, *2 (N.D. Cal. Feb. 13, 1996).

According to the Ninth Circuit Court of Appeals, the following factors should be considered when deciding whether to grant default judgment: (1) the possibility of prejudice to the plaintiff; (2) the merits of plaintiff's substantive claims; (3) the sufficiency of the complaint; (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning the material facts; (6) whether defendant's default was the product of excusable neglect; and (7) the strong public policy favoring decisions on the merits. *Eitel v. McCool*, 782 F.2d 1470, 1471-72.

Once default has been entered, the allegations contained in the complaint, other than damages, are deemed admitted by the non-responding defendant. Fed.R.Civ.P. 8(b)(6); *see also Geddes v. United Fin. Group*, 559 F.2d 557, 560 (9th Cir. 1977) ("upon default, the factual allegations of the complaint, except those relating to the amount of damages, will be taken as true"). Still, the court must consider "whether the unchallenged facts constitute a legitimate cause of action, since a party in default does not admit mere conclusions of law." 10A Charles Alan Wright, Arthur R. Miller, & Mary Kay Kane, Federal Practice and Procedure: Civil 3d 2688, at 63 (1998) (footnote

omitted); *see also Cripps v. Life Ins. Co. of N. Am.*, 980 F.2d 1261, 1267 (9th Cir. 1992) ("necessary facts not contained in the pleadings, and claims which are legally insufficient, are not established by default"); *Doe v. Qi*, 349 F.Supp.2d 1258, 1272 (N.D. Cal. 2004) ("although the factual allegations of the complaint together with other competent evidence submitted by the moving party are normally taken as true … this Court must still review the facts to insure that the Plaintiffs have properly stated claims for relief").

If the court determines that the allegations in the complaint are sufficient to establish liability, it must then determine the "amount and character" of the relief that should be awarded. 10A Wright, Miller & Kane, *supra*, 2688, at 63; *Elektra Entertainment Group Inc. v. Crawford*, 226 F.R.D. 388, 394 (C.D. Cal. 2005).

### B. Procedural Requirements

Before a court can enter default judgment against a defendant, the plaintiff must satisfy procedural requirements for default judgments: (1) indicating when and against which party default has been entered; (2) identifying the pleading as to which default has been entered; (3) indicating whether the defaulting party is an infant or incompetent person; (4) stating that the Servicemembers Civil Relief Act, 50 App. U.S.C. 521, does not apply; and (5) affirming that notice has been served on the defaulting party if required by Rule 55(b)(2). LRCiv 55-1, 55-2; *PepsiCo, Inc.*, 238 F.Supp.2d at 1174.

Here, Plaintiff has satisfied the procedural requirements. First, default was entered against Defendant. Second, default was entered as to the Doc. 1 Complaint. Third, the defaulting party is not an infant or incompetent person; it is a corporation. Fourth, the Servicemembers Civil Releif Act is not applicable in this case. This is an ADA case. Finally, although notice of these moving papers is not required by Rule 55(b)(2), Plaintiff's counsel certifies that he will forward a copy of this Motion to Defendant's counsel, who has not appeared in this case. Therefore, although notice is not required, notice was sent notwithstanding. Accordingly, Plaintiff has satisfied the procedural requirements.

C. **The Eitel Factors**

The court must next determine whether, applying the *Eitel* factors, granting Plaintiff's motion is appropriate.

**1. Possibility of Prejudice to Plaintiff**

The first *Eitel* factor considers whether a plaintiff will suffer prejudice if a default judgment is not entered. *PepsiCo, Inc.*, 238 F.Supp.2d at 1177. Here, Plaintiff would have no other recourse if a default judgment is not entered because Defendant refuses to respond to the Complaint notwithstanding service of process; additionally, Plaintiff's counsel contacted Mr. Appleby numerous times. There is no possibility that Defendant is not aware of the procedure in this case. Therefore, Plaintiff would suffer prejudice without recourse against Defendants, and so the first *Eitel* factor weighs in favor of default judgment.

**2. Merits of Plaintiff's Substantive Claim and Sufficiency of the Complaint**

The second and third *Eitel* factors "require that a plaintiff state a claim on which it may recover." *PepsiCo, Inc.*, 238 F.Supp.2d at 1175; *see also Discovery Communications, Inc. v. Animal Planet, Inc.*, 172 F.Supp.2d 1282, 1288 (C.D. Cal. 2001) ("The Ninth Circuit has suggested that the two *Eitel* factors involving the substantive merits of Plaintiff's claims and the sufficiency of the complaint [ ] require that plaintiff's allegations state a claim on which it may recover.'" quoting *Danning v. Lavine*, 572 F.2d 1386, 1388 (9th Cir. 1978)). Here, Plaintiff makes claims and seeks default judgment under the ADA vis-à-vis a violation of 28 C.F.R. § 36.302(e)(1). The merits are addressed below.

**a. Discrimination Under Title III of the ADA**

Title III of the ADA prohibits discrimination by public accommodations. It provides that "[n]o individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation." 42 U.S.C. 12182(a).

5

Here, Plaintiff alleges that Defendant owns the public accommodation (a hotel). Defendant is therefore liable for violating the ADA if Plaintiff can show that she suffered discrimination at the hotel due to her disability. Discrimination under Title III includes "a failure to remove architectural barriers … in existing facilities … where such removal is readily achievable." *Id.*, 12182(b)(2)(A)(iv). The term "readily achievable" means "easily accomplishable and able to be carried out without much difficulty or expense." *Id.*, 12181(9). Additionally, the hotel website is a PPA. *See* 28 C.F.R. §36.104 (Definition of PPA and 104(1)(ii)(B)(1)).

"To prevail on a Title III discrimination claim, the plaintiff must show that (1) she is disabled within the meaning of the ADA; (2) the defendant is a private entity that owns, leases, or operates a place of public accommodation; and (3) the plaintiff was denied public accommodations by the defendant because of his disability." *Molski v. M.J. Cable, Inc.*, 481 F.3d 724, 730 (9th Cir. 2007). In addition, "to succeed on an ADA claim of discrimination on account of one's disability due to an architectural barrier, the plaintiff must also prove that: (1) the existing facility at the defendant's place of business presents an architectural barrier prohibited under the ADA and (2) the removal of the barrier is readily achievable." *Parr v. L&L Drive-Inn Restaurant*, 96 F.Supp.2d 1065, 1085 (D. Haw. 2000); *see also Johnson v. Beahm*, 2011 WL 5508893, *2 (E.D. Cal. Nov. 8, 2011).

**(1) Whether Plaintiff Has Standing to Bring an ADA Claim**

"[A]s with other civil rights statutes, to invoke the jurisdiction of the federal courts, a disabled individual claiming discrimination must satisfy the case or controversy requirement of Article III by demonstrating his standing to sue at each stage of the litigation." *Chapman v. Pier 1 Imports (U.S.) Inc.*, 631 F.3d 939, 946 (9th Cir. 2011). To establish Article III standing, a plaintiff must demonstrate that he or she has suffered an injury in fact, that the injury is traceable to defendant's challenged conduct, and that the injury can be redressed by a favorable decision. *Hubbard v. Rite Aid Corp.*, 433 F.Supp.2d 1150, 1162 (S.D. Cal. 2006). Where statutory rights are

1  considered, the Ninth Circuit describes the standing inquiry as boiling down to
2  "essentially" the injury-in-fact prong. *See Robins v. Spokeo, Inc*., 742 F.3d 409, 414 (9th
3  Cir. 2014), *vacated and remanded on other grounds*, 136 S.Ct. 1540 (2016); *as revised*
4  (May 24, 2016); *Edwards v. First Am. Corp*., 610 F.3d 514, 517 (9th Cir. 2010);
5  *Fulfillment Servs. Inc. v. United Parcel Serv., Inc*., 528 F.3d 614, 618-19 (9th Cir.
6  2008). Here, Plaintiff has Article III standing because she alleges she was denied equal
7  access to the hotel website, and thus the hotel, and was deterred from booking a room
8  due to this discrimination; this allegation must be accepted as true as a result of
9  Defendant's default. Additionally, the injury is redressable with an order that Defendant
10  fix its website so that Plaintiff can reserve an accessible room in the future.
11      Where a plaintiff seeks injunctive relief, she must also demonstrate a significant
12  possibility of future harm. *San Diego County Gun Rights Comm. v. Reno*, 98 F.3d 1121,
13  1126 (9th Cir. 1996). In the ADA context, in determining the likelihood that a plaintiff
14  will return to defendant's facility, courts have examined four factors. *Hubbard*, 433
15  F.Supp.2d at 1162. Here, although Plaintiff does not allege an unambiguous intention to
16  return to the hotel, this is not fatal to a finding that she has standing to seek injunctive
17  relief. Indeed, "[d]emonstrating an intent to return to a non-compliant accommodation
18  is but one way for an injured plaintiff to establish Article III standing to pursue
19  injunctive relief. A disabled individual also suffers a cognizable injury if he is *deterred*
20  from visiting a noncompliant public accommodation because she has personally
21  encountered barriers related to her disability there." *Chapman*, 631 F.3d at 949
22  (emphasis added); *see also Doran v. 7-Eleven, Inc*., 524 F.3d 1034, 1042 n. 5 (9th Cir.
23  2008) ("Once a disabled individual has encountered or become aware of alleged ADA
24  violations that deter his patronage of or otherwise interfere with his access to a place of
25  public accommodation, he has already suffered an injury in fact traceable to the
26  defendant's conduct and capable of being redressed by the courts, and so he possesses
27  standing under Article III"); *Pickern v. Quality Foods Inc*., 293 F.3d 1133, 1138 (9th
28  Cir. 2002) ("We hold that a disabled individual who is currently deterred from

1  patronizing a public accommodation due to a defendant's failure to comply with the
2  ADA has suffered 'actual injury'"). Since Plaintiff here alleged that she was deterred
3  from booking a room at Defendant's hotel on its website, and that she will check back
4  periodically to book a room if the hotel website is remedied, she has adequately pled
5  that she has Article III standing to seek injunctive relief under the ADA.

**(2) Whether Plaintiff Has Shown She is Disabled**

The ADA defines disability as "[a] physical or mental impairment that substantially limits one or more major life activities …[,] a record of such an impairment[,] or being regarded as having such an impairment. 42 U.S.C. 12102(1). Major life activities as defined by the ADA including walking and standing. *Id*., 12102(2). Here, Plaintiff alleges that she relies on a wheelchair for locomotion and that she is disabled. In fact, she is an amputee who cannot walk. Accordingly, Plaintiff is disabled under the ADA.

**(3) Whether the Hotel and Website Are a Place of Public Accommodation**

According to 42 U.S.C. 12181(7)(A), a hotel or inn is a place of public accommodation. Accordingly, Defendant's hotel is a place of public accommodation. Additionally, the website at issue is also a PPA. *See* 28 C.F.R. §36.104 (Definition of PPA and 104(1)(ii)(B)(1)).

**(4) Whether Plaintiff Has Shown That the Hotel's Architectural Barriers Denied Him Public Accommodations Due to Disability**

The next two elements of an ADA architectural barriers claim evaluate whether architectural barriers worked to discriminate against the plaintiff on account of physical disability. *See Chapman*, 631 F.3d at 950 ("an ADA plaintiff suffers an injury in fact either because discriminatory barriers deter him from returning to a facility or because they 'otherwise interfere with his access to' the facility," quoting *Doran*, 524 F.3d at 1042 n. 5). Pursuant to the relevant regulation, 28 C.F.R. § 36.302(e), Plaintiff could not reserve a room in the same manner as an able-bodied person can reserve a non-accessible room.

Here, Plaintiff alleges she is disabled and relies on a wheelchair for locomotion, and therefore she requires the standard accessibility features of ADA-accessible rooms. Therefore, Defendant's failure to allow Plaintiff to reserve such a room caused the injury to Plaintiff of not being able to book a room as an able-bodied person can. Accepting Plaintiff's allegations as true, the third and fourth elements of a Title III discrimination claim show that the barriers that were encountered and that exist are prohibited by the ADA and denied her full and equal access to the lodging due to her disability.

### (5) Whether Changing the Website is Readily Achievable

Whether removal of a barrier is readily achievable involves consideration of four factors: " A) the nature and cost of the action needed …; B) the overall financial resources of the facility or facilities involved in the action; the number of persons employed at such facility; the effect on expenses and resources, or the impact otherwise of such action upon the operation of the facility; C) the overall financial resources of the covered entity; the overall size of a covered entity with respect to the number of its employees; the number, type, and location of its facilities; and D) the type of operation or operations of the covered entity, including the composition, structure, and functions of the workforce of such entity; [and] the geographic separateness, administrative or fiscal relationship of the facility or facilities in question to the covered entity." *Hubbard*, 433 F.Supp.2d at 1168 (citing 42 U.S.C. 12181(9)).

Here, altering a website is a simple task; so simple that many vendors, such as GoDaddy.com, offer lay persons the ability to create their own websites. Additionally, Plaintiff's allegation that removal of the barrier at issue is readily achievable, which is accepted as true, is sufficient to satisfy her burden of production. *See, e.g., Johnson v. Hall*, 2012 WL 1604715, *3 (E.D. Cal. May 7, 2012) (plaintiff's allegation that architectural barriers were "readily removable" and that he sought injunctive relief to remove all readily achievable barriers satisfied his burden); *Beahm*, 2011 WL 5508893 at *3 (holding that plaintiff's allegation that architectural barriers were readily

removable was sufficient because it was accepted as true on default; *see also Sceper*, 2009 WL 3763823 at *4 (granting default judgment on plaintiff's ADA claim even though plaintiff did not specifically allege that removal of barriers was readily achievable, and pled instead that defendants were required to remove architectural barriers).

### b. Conclusion RE Second and Third Eitel Factors

Taking the facts alleged in the Complaint as true and adding the evidence presented as exhibits hereto, Plaintiff has shown that the second and third *Eitel* factors weigh in favor of entry of default judgment.

### 3. The Sum of Money at Stake

The fourth Eitel factor balances "the amount of money at stake in relation to the seriousness of the [defaulting party's] conduct." *PepsiCo, Inc*., 238 F.Supp.2d at 1176. Default judgment is disfavored where the sum of money at stake is too large or unreasonable in relation to defendant's conduct. *See Truong Giang Corp. v. Twinstar Tea Corp*., 2007 WL 1545173, *12 (N.D. Cal. May 29, 2007) (citing *Totten v. Hurrell*, No. 00-2718, *2 (N.D. Cal. Nov. 28, 2001)).

Here, Plaintiff seeks $3,965.00, including attorneys' fees and costs, plus whatever the Court determines regarding nominal damages. This amount, plus any amount that would have to be spent to comply with an injunction, would be the entirety of Defendant's liability should the court enter default judgment. Given that Defendant has failed to respond to the Complaint and has not shown any willingness or action to comply with the Americans with Disabilities Act, this relatively low amount is needed to force compliance. Courts frequently enter default judgments in ADA cases that impose similar financial liabilities on a non-responding defendant who has not shown a willingness to comply with the ADA. *See, e.g. Moore v. Cisneros*, 2012 WL 6523017, *4 (E.D. Cal. Dec. 13, 2012) (noting that an award of $10,119.70 in the context of a default judgment was "not a particularly large sum of money, nor does it appear unreasonable in light of Defendant's actions"); *Johnson v. Huynh*, 2009 WL 2777021,

*2 (E.D. Cal. Aug. 27, 2009) (holding that $12,000 was a "relatively small award of damages" in a default judgment case); *Mantic Ashanti's Cause ex rel Pinnock v. Darwish Plaza*, 2006 WL 1360969 (S.D. Cal. Apr. 21, 2006) (finding the amount at stake reasonable when plaintiffs sought a total of $16,276.68 consisting of $12,000 in statutory damages for, inter alia, architectural entrance barriers and impermissibly narrow paths of travel). Plaintiff therefore believes the fourth *Eitel* factor is satisfied.

### 4. The Possibility of Dispute

The next *Eitel* factor considers the possibility that material facts may be in dispute. *PepsiCo, Inc.*, 238 F.Supp.2d at 1177; *Eitel*, 782 F.2d at 1471-72. Here, there is no possibility of dispute, as Defendant has not challenged the allegations in the Complaint, which are to be accepted as true. This factor also weights in favor of entry of default judgment.

### 5. Possibility of Excusable Neglect

The sixth *Eitel* factor considers whether a defendant's default may be haven the product of excusable neglect. *PepsiCo, Inc.*, 238 F.Supp.2d at 1177. Here, the possibility of excusable neglect is non-existent. Additionally, this Motion was sent to Defendant. There is zero chance there is any excusable neglect considering Plaintiff's numerous attempts to finalize the settlement with Mr. Appleby.

### 6. Policy of Deciding Cases on the Merits

"Cases should be decided upon their merits whenever reasonably possible." *Eitel*, 782 F.2d at 1472. The mere enactment of Rule 55(b) indicates, however, that "this preference, standing alone, is not dispositive." *PepsiCo, Inc.*, 238 F.Supp.2d at 1177. Indeed, "Defendant's failure to answer Plaintiff's Complaint makes a decision on the merits impractical, if not impossible." *Id*. Therefore, the seventh *Eitel* factor weighs in favor of entry of default judgment.

### D. The Character and Amount of Plaintiff's Recovery

Rule 54(c) limits the relief that can be sought in a motion for entry of default judgment to that identified in the complaint. Fed.R.Civ.P. 54(c) ("A default judgment

must not differ in kind from, or exceed in amount, what is demanded in the pleadings"). Defaulting defendants are not deemed to have admitted facts concerning damages alleged in the complaint. *PepsiCo, Inc.*, 238 F.Supp.2d at 1177.

### 1. Nominal Damages Pursuant to Bayer v. Neiman Marcus Grp.

A few months ago, the Ninth Circuit Court of Appeals handed down a landmark decision in the case of *Bayer v. Neiman Marcus Grp.*, Ninth Circuit case no. 15-15287 (June 26, 2017) (for publication). In *Bayer*, the Ninth Circuit addressed a mootness issue in an ADA case. The Ninth Circuit held that nominal damages, even if never pled, are available in ADA cases. Accordingly, Plaintiff seeks nominal damages in an amount to be determined by the Court.

### 2. Injunctive Relief

To be entitled to injunctive relief under 42 U.S.C. 12188(a)(2), the plaintiff must show that Defendant has violated the ADAAG. "In the case of violations of this title, injunctive relief shall include an order to alter facilities to make such facilities readily accessible to and usable by individuals with disabilities …." *Id.*; see *Moeller v. Taco Bell*, 816 F.Supp.2d 831, 859 (N.D. Cal. 2011). A plaintiff is not required to satisfy the other prerequisites generally needed for injunctive relief since "the standard requirements for equitable relief need not be satisfied when an injunction is sought to prevent the violation of a federal statute which specifically provides for injunctive relief." *Moeller*, 816 F.Supp.2d at 859 (quoting *Antoninetti v. Chipotle Mexican Grill, Inc.*, 643 F3d 1165, 1175-76 (9th Cir. 2010)). Thus, injunctive relief is proper when architectural barriers at defendant's establishment violate the ADA and removal of the barriers is readily achievable. *See e.g. Moreno v. La Curacao*, 463 Fed.Appx. 669, 670 (9th Cir. Dec. 23, 2011) (Unpub. Disp.); *Johnson v. Singh*, 2011 WL 2709365, *3 (E.D. Cal. July 11, 2011); *Sceper*, 2009 WL 3763823 at *4.

Here, and as noted above, Plaintiff properly pled a violation of the ADA and its implementing regulations due to Defendant not allowing for the reservation of ADA rooms in the "same manner" as one can reserve non-accessible rooms. Also noted

1  above, the allegation that it is readily achievable to change the website is accepted as
2  true. Accordingly, injunctive relief compelling Defendant to remove barriers at the
3  hotel website so that it is readily accessible to and usable by individuals with disabilities
4  is therefore appropriate. Additionally, closure of the hotel website at large is appropriate
5  given Defendant's historical failure to provide ADA access at is lodging facility is
6  appropriate.

   3.  **Attorneys' Fees**

8  "The most useful starting point for determining the amount of a reasonable fee is
9  the number of hours reasonably expended on the litigation multiplied by a reasonable
10 hourly rate." *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). This "lodestar" figure
11 presumptively provides an accurate measure of reasonable fees. *Van Gerwen v.
12 Guarantee Mut. Life Co.*, 214 F.3d 1041, 1045 (9th Cir. 2000). "The lodestar amount is
13 presumptively the reasonable fee amount, and thus a multiplier may be used to adjust
14 the lodestar amount upward or downward only in rare and exceptional circumstances,
15 supported by both specific evidence on the record and detailed findings by the lower
16 courts that the lodestar amount is unreasonably low or unreasonably high." *Van
17 Gerwen*, 214 F.3d at 1045 (quoting *Hensley*, 461 U.S. 424) (internal quotation marks
18 omitted).

19 To get to the lodestar figure, a plaintiff must submit "satisfactory evidence …
20 that the requested rates are in line with those prevailing in the community for similar
21 services by lawyers of reasonably comparable skill, experience, and reputation." *Blum
22 v. Stenson*, 465 U.S. 886, 895-96 n. 11 (1984). The relevant community is that in which
23 the district court sits. *Schwartz v. Secretary of Health and Human Servs.*, 73 F.3d 895,
24 906 (9th Cir. 1995).

25 Here, Plaintiff's counsel seeks an hourly rate of $650.00 per hour based on his
26 skill, experience and qualifications. Plaintiff's counsel has been an attorney for eleven
27 years and has prosecuted Title III ADA cases for over three of those years. Indeed, over
28 those three years, Plaintiff's counsel has prosecuted over 600 Title III cases spanning

across several different district courts and state courts. Additionally, the number of hours (6.10) billed is far from excessive and is very reasonable, especially in light of the aggression with which Defendant has acted up to this point in the case. Exhibit 1. The total amount of fees requested in the amount of $3,965.00 is reasonable and not excessive.

### 4. Costs

Plaintiff also seeks costs in the amount of $400.00, which represents the filing fee. This cost request is reasonable.

### III.  CONCLUSION

For the foregoing reasons, judgment should be entered as requested.

RESPECTFULLY SUBMITTED this 5th day of January, 2018.

**THE STROJNIK FIRM LLC**

By _____
Peter K. Strojnik (026082)
2415 East Camelback Road, Suite 700
Phoenix, Arizona 85016
Attorneys for Plaintiff